**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRIGINA
Richmond Division**

**OMEGA PROTEIN, INC.**

      **Plaintiff,**                         **Civil Action No.** 3:23cv347

**v.**

**SELECTIVE INSURANCE COMPANY
OF THE SOUTHEAST**,

      **Serve: Corporation Service Company
          100 Shockoe Slip, Floor 2
          Richmond VA 23219
          Registered Agent**

**and**

**TJORVI JONASSON,**

      **Serve at residence:
      7065 Calle Ponce De Leon
      Navarre, FL 32566**

      **Nominal Defendant.**

**COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

COMES NOW Omega Protein, Inc., by and through counsel, and for its Complaint

seeking this Court's declaratory judgment and other relief, respectfully states as follows:

**The Parties**

1. Omega Protein, Inc. ("Omega Protein") is a Virginia corporation, with its principal place

   of business at 610 Menhaden Road, Reedville, Virginia. Omega Protein operates a fish

   processing facility (the "Plant") at the Reedville location.

2. Selective Insurance Company of the Southeast ("Selective") is a corporation organized

   and existing under the laws of the State of Indiana, with its principal place of business in

   North Carolina, and it is engaged in the business of providing insurance. At all relevant

1

times, Selective provided Commercial General Liability insurance to Martin Control & Equipment Company ("Martin Control") under Policy Number S229436 (the "Selective Policy"). The Selective Policy is attached as **Exhibit A**. At all relevant times, Omega Protein was an additional insured under the Selective Policy.

3. Nominal Defendant, Tjorvi Jonasson ("Jonasson") is a private individual who resides in Florida. He was injured at the Plant on December 6, 2021, while he was at the Plant performing work as an employee of Martin Control. He has filed suit in a related action in this Court against Omega Protein for personal injuries, seeking $5,000,000 in damages, in *Jonasson v. Omega Protein, Inc.*, No. 3:23-cv-219-HEH (the "Jonasson Action"). *See* Complaint, attached as **Exhibit B**. Jonasson is joined as a nominal defendant because he has a potential interest in the outcome of these proceedings.

### Related Party and Actions

4. Martin Control is a Virginia entity with its principal place of business in Henrico County, Virginia. It provides digital controls equipment and services to Omega Protein.

5. In the Jonasson Action, Omega Protein answered on May 8, 2023, alleging among other things that Jonasson's negligent acts and omissions directly caused his injuries. *See* Jonasson Action, Doc. 11, attached as **Exhibit C**.

6. In the Jonasson Action, Omega Protein filed a third-party complaint against Martin Control on May 12, 2023, seeking a declaration that (i) Martin Control owes it defense and indemnity for the Jonasson claim by contract; (ii) Martin Control breached its contract with Omega Protein to obtain insurance for Omega Protein for claims made by Martin Control's employees; and (iii) Martin Control breached the warranty of workmanlike performance in the contract with Omega Protein by, among other things,

failing to properly train and supervise Jonasson. *See* Jonasson Action, Doc. 12, attached as **Exhibit D**.

## Jurisdiction

7. This case falls within the Court's diversity jurisdiction pursuant to Title 28 of the United States Code, § 1332. The parties are diverse and the amount in controversy exceeds $75,000.

8. Further, this is an action for declaratory relief pursuant to Title 28 of the United States Code, §§ 2201 *et seq*, in that a present controversy exists between the parties hereto in which Plaintiff asks this Court to adjudicate and determine the rights of the parties to a contract of insurance which is in dispute.

9. Venue lies within the Eastern District of Virginia as this cause arises out of a policy of insurance delivered by Selective to the insured named therein, Martin Control, in this District.

## FACTS

## The Master Service Contract

10. On June 17, 2019, Omega Protein and Martin Control entered into a Master Service Contract (the "Contract") wherein Omega Protein agreed to utilize the services of Martin Control, and Martin Control agreed to provide such services in exchange for certain promises and representations by the respective parties.  A true and accurate copy of this contract is attached hereto as **Exhibit E.** Martin Control had provided these services to Omega Protein for many years.

11. The Contract includes specific indemnity and insurance obligations owed by Martin Control to Omega Protein.

12. Paragraph 9(a) of the Contract contains the following indemnity agreement (emphasis in the original):

The **Provider agrees to indemnify, defend and hold harmless Omega**, and each of its owners . . . **from any and all claims, actions, demands, suits, judgments, damages (whether actual, exemplary or punitive) and causes of action,** (including all costs, attorney's fees, interests and expenses) made in connection with, related to, or arising out of Provider's presence on Omega's property or services performed for Omega as follows:

1. **For any injury or death to the Provider's employees, personnel, agents, servants, invitees, and/or subcontractors by whomever brought, whether based on statute, tort, contract or quasi-contract. Such defense, indemnity, and hold harmless shall apply without regard to the cause or causes thereof or the negligence of any party or whether or not Omega was or is claimed to be solely negligent, passively, concurrently or actively negligent, or expressly negligent, and regardless whether liability without fault (including but not limited to claims for unseaworthiness of vessels) is imposed or sought to be imposed on Omega.**

13. Paragraph 8 of the Contract requires that Martin Control obtain various types of insurance, including "Comprehensive General Liability Insurance . . . for injury to or death of any one person" . . . "[w]ith limits per occurrence of no less than $2,000,000[.]" *See* Contract, ¶ 8.1(d).

14. Paragraph 8.11 further contains the following provisions, in relevant part, regarding the insurance Martin Control was to provide:

All policies of insurance required by this Article 6 [sic] shall, during the term of any work performed under the term of this Contract, be endorsed in the following manner or in a manner substantially similar:

. . .

b) Omega Protein Corporation and its affiliated subsidiary and/or interested companies are hereby added as Additional Insured during such times as Provider is engaged in operations subject to the provisions of this Contract between Provider and Omega[.]

. . .

4

d) …. The coverages afforded to Omega as an additional insured shall at least be equal to the coverages afforded to the Provider under such policies and shall in all respects include coverage for the obligations of the Provider under this Agreement.

15. The term of the Contract was for one year, with automatic renewal for another year and thereafter until cancelled by either party. *See* Contract ¶ 2.

16. Neither Omega Protein nor Martin Control has ever cancelled the Contract.

17. Martin Control caused its insurance broker to provide a Certificate of Insurance to Omega Protein for the policy year beginning on September 22, 2021, reflecting that insurance coverage was provided by Selective in compliance with the insurance obligations in the Contract. *See* Certificate of Insurance, attached as **Exhibit F**.

18. Omega relied on this Certificate of Insurance to its detriment.

## Plant Winterization and Jonasson's Injuries

19. At all relevant times, Tjorvi Jonasson was a trainee instrument technician ("IT") for Martin Control, and Martin Control dispatched Jonasson to the Omega Protein Plant to perform work on December 6, 2021.

20. On this date, Martin Control also dispatched its senior IT, Andrew Samuelson, to the Plant to supervise the work he and Jonasson were to perform, which was to remove digital transmitters from various equipment at the Plant.

21. The removal of the transmitters is performed as part of the winterization of the Plant. After the fishing season ends, the Plant is shut down. Before winter arrives, Omega Protein drains all water from Plant equipment and shuts off the fresh water supply so that the equipment is not damaged by freezing water.

22. Many elements of the Plant equipment, including boiler room equipment and evaporator equipment, have digital sensors that transmit tank fluid level information ("digital

transmitters" or "transmitters") that were at all relevant times designed and installed by Martin Control. These transmitters relay information to the control room so that various data, such as tank fluid levels, can be viewed and monitored in one place in the Control Room.

23. The Plant is a complex industrial site, with numerous and various types of equipment, storage tanks, and digital transmitters.

24. As part of the winterization process, Omega Protein requests that Martin Control remove the digital transmitters from the tanks that no longer contain water.

25. The Plant contains five tanks, however, that do not contain water and are therefore not drained as part of the winterization process. In particular, each of the two evaporator lines (the original evaporator and the New Evaporator System) at the Plant have a tank containing sodium hydroxide 50%.

26. Martin Control is intimately familiar with the Plant, having designed, installed, removed, and re-installed and serviced digital transmitters at the Plant for many years. In particular, Martin Control designed the digital control system for the New Evaporator System. Martin Control employs instrument technicians ("ITs") to work on these transmitters at the Plant.

27. Prior to 2021, Martin Control had removed the transmitters at the Plant as part of the winterization process every year for many years, and the process had been performed in the same way, without change, for each of these years.

28. Before the Plant starts operations back up after a winter/off-season shutdown, Martin Control returns to re-install the transmitters it had removed the prior winter.

29. Every year prior to 2021, Martin Control sent two-man teams to perform the winterization work.

30. Omega Protein relies on Martin Control employees working in two-person teams (the "two-man rule")—and performing their tasks in a safe and workmanlike manner—to ensure and promote the safety of the ITs and the functionality of the equipment Martin Control is to perform work on.

31. Jonasson arrived at the Plant, alone, on December 6, 2021, in the morning. At some point that day, Jonasson learned that his supervisor Samuelson would be very late or would not arrive at the Plant that day.

32. While at the Plant and waiting for Samuelson in the boiler room, Jonasson encountered Omega Protein employee Sonny Abbott, who inquired as to Jonasson's supervisor's status and instructed Jonasson that he was not authorized to commence any work until his supervisor IT arrived.

33. Jonasson assured Abbot that he would not begin any work until his supervisor arrived.

34. While at the Plant and waiting for Samuelson in the boiler room, Jonasson encountered Omega Protein employee Ronnie Bray, who saw that Jonasson was not working. Jonasson indicated to Bray that he was waiting for his supervisor to arrive before beginning work.

35. After some period of waiting for Samuelson and after learning Samuelson was delayed, Jonasson nonetheless commenced work, alone, without permission, to remove transmitters from Plant equipment, in violation of the two-man rule and the direct instructions from Sonny Abbot that he was not authorized to work until his supervisor arrived.

7

36. Jonasson failed to check that all tanks had been drained, and controls isolated, by observing the readings readily available in the Plant's Control Room before engaging in any work.

37. Jonasson failed to properly check tank levels by physically observing them through the hatch at the top of the various tanks.

38. Jonasson failed to properly check the contents of the tank at issue in the New Evaporator System by observing and heeding the written warnings on the tank indicating its contents and stating "CAUSTIC."

39. Jonasson violated safe operating practices and his training when he improperly opened the flange on the industrial tank containing sodium hydroxide 50% by first loosening the upper bolts, causing sodium hydroxide to spray in his face.

40. Martin Control and Jonasson had actual knowledge it was not authorized to touch or service the sodium hydroxide 50% tank; that tank was not to be serviced that day because it was not winterized nor did it need to be.

41. Further, without the knowledge or consent of anyone from Omega Protein, Jonasson remained on the premises without authorization and continued to perform work after the Plant had shut down for the day at 3:30 pm, and he was in fact injured at approximately 4:00 pm.

42. Due to the aforementioned acts and omissions of Martin Control's employee performing Martin Control's work at the Plant in the course and scope of his employment, Jonasson was severely injured.

43. Jonasson's acts and omissions were negligent and done with reckless disregard for his own safety.

44. On the day of the injury and shortly thereafter, Martin Control admitted to Omega Protein among other things that Jonasson was not supposed to be working alone, was not supposed to be working after the Plant's business hours, and he was not supposed to perform any work on any tank containing sodium hydroxide 50% or even touch such tanks.

**Tenders of Defense, Indemnity, and Requests for Insurance Coverage**

45. On December 17, 2021, counsel for Jonasson placed Omega Protein on notice of Jonasson's claim for personal injuries as a result of an industrial incident at the Plant on December 6, 2021. See Phelan Petty Letter of Representation, attached as **Exhibit G.**

46. On January 24, 2022, Omega Protein forwarded the letter from Jonasson's counsel to Martin Control and requested indemnification and notification to Martin Control's insurance carrier based on the terms of the Contract. *See* Notice of Claim to Martin Control, attached as **Exhibit H.**

47. On January 24, 2022, Omega Protein also forwarded the letter from Jonasson's counsel to the two insurance carriers of Martin Control, including Selective, as disclosed on the Certificate of Insurance, putting them on notice of the Jonasson claim, and notifying the carriers that based on the terms of the Contract Omega Protein is required to be named as an additional insured on their policies with Martin Control (the "Tender"). *See* Notice of Claim to Selective, attached as **Exhibit I.**

48. On April 11, 2022, Selective replied, on its behalf and on behalf of Martin Control, to the Tender by stating the request was "premature since a lawsuit has not been filed," and directed Omega Protein to resubmit the request once suit was filed.  *See* Selective's Initial

Tender Response, attached as **Exhibit J**. Selective did not, however, deny coverage or reserve its rights to do so.

49. On July 18, 2022, November 10, 2022, and again on January 3, 2023, Omega Protein asked Martin Control's counsel for the Jonasson matter assigned by Selective, Mark Nanavati, for any updates on the Jonasson matter and/or any response to the Tender, and Mr. Nanavati replied generally that there were no updates except that, in November, he noted a demand was pending from Jonasson's counsel. Mr. Nanavati also indicated he did not know if the Tender would be accepted by Selective. *See* Update Emails, attached as **Exhibit K.**

50. On February 21, 2023, counsel for Jonasson made a demand to Omega Protein for $5,000,000 to settle Jonasson's claim ("Demand Letter"). To this Demand Letter, counsel attached a courtesy copy of a draft complaint he planned to file that April should the claim not be resolved by then or reserve its rights to do so.

51. On February 21, 2023, Omega Protein forwarded the Demand Letter to Selective and renewed the Tender. *See* Renewal of Tender to Munley, attached as **Exhibit L.** Selective did not respond, and did not deny coverage pr reserve its rights to do so.

52. On March 31, 2023, Jonasson's counsel informed Omega Protein and counsel for Martin Control that suit was filed. On April 11, 2023, Omega Protein informed counsel for Martin Control that Omega Protein had been served with the Jonasson Complaint on April 4, 2023, and again renewed the Tender. Mr. Nanavati replied that a denial letter to Omega Protein's Tender from Selective was pending. *See* March - April 2023 Emails, attached as **Exhibit M.**

53. On April 17, 2023, some 14 months after Omega first requested coverage, Selective, for itself and Martin Control, wrote to Omega Protein and rejected Omega Protein's request for defense, indemnity and coverage relating to the Jonasson claim. *See* Selective Denial of Tender*,* attached as **Exhibit N**.[1]

54. In its Denial Letter, Selective acknowledged the Contract, and acknowledged that Omega Protein is an additional insured under the Selective Policy. Yet Selective claimed that Martin Control and Selective do not owe a defense, indemnification, or insurance coverage to Omega Protein for the Jonasson claim. Selective' s rationale for the denial was limited to these bare statements, with no further explanation or analysis:

> We acknowledge the additional insured status afforded to Omega, based on the contract language and our Insured's policy. However, as all liability is alleged against Omega for failing to properly drain the tank, our Insured would not be obligated to provide you indemnification, hold harmless status or a defense in this matter.
>
> …
>
> There are no allegations of negligence against our Insured, and the allegations of negligence are solely against Omega. Therefore, Omega would not qualify for defense, indemnification and hold harmless status under [sic] and we must deny your tender.

Denial Letter at 7, 11.

55. In apparent reliance on the Denial Letter of April 17, 2023, Selective has otherwise failed and refused to communicate with Omega Protein, has failed to respond to Omega Protein's requests for coverage, defense and indemnity, has apparently conducted no investigation of Jonasson's claim, and has failed to provide any explanation for its refusal to provide defense, indemnity, and insurance coverage under the Selective Policy.

---

[1] Though this letter is dated February 21, 2023 (the date Omega Protein renewed its tender of defense and indemnity), the letter was received via U.S. mail by undersigned counsel on April 17, 2023**.**

**The Selective Policy**

56. Selective issued a Commercial Policy Package of insurance to Martin Control for the period September 22, 2021 to September 22, 2022, under Policy Number S2294366. The Selective Policy provided, among other types of coverage, Commercial General Liability ("CGL") coverage with limits of $1,000,000 per occurrence. *See* Policy (Exhibit A), at Selective 208-261.

57. The Selective Policy also includes Commercial Umbrella Liability Coverage up to $5,000,000 over the underlying liability insurance. *See* Policy (Exhibit A), at Selective 341-379.

58. In the Selective Policy, Selective agreed to:

[P]ay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

Policy at Selective 223.

59. The Selective Policy was modified by the ElitePac General Liability Extension Endorsement CG 73 00 01 19 (the "Endorsement"). *See* Policy at Selective 246-252.

60. The Endorsement contained the following language, in pertinent part (with bolded emphasis in original and italics emphasis added):

**Blanket Additional Insureds – As Required by Contract**
Subject to the Primary and Non-Contributory provision set forth in this endorsement, **SECTION II -WHO IS AN INSURED** is amended to include as an additional insured:

* * *

**B. Other Additional Insureds**
Any of the following persons or organizations with *whom you have agreed in a written contract*, written agreement, or written permit *that such persons or*

12

*organizations be added as an additional insured on your commercial general liability policy*:

* * *

**4. Any Person or Organization Other Than A Joint Venture**
Any person or organization (other than a joint venture of which you are a member), but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts of [sic] omissions of those acting on your behalf in the performance of your ongoing operations or in connection with property owned by you.

61. Under the Endorsement, and the Contract ¶ 8.11, the Policy provides coverage to Omega Protein as an additional insured.  *See also* Denial Letter ("We acknowledge the additional insured status afforded to Omega, based on the contract language and our Insured's policy.").

62. Jonasson was acting in the course and scope of his employment with Martin Controls when he was injured at Omega Protein's Plant, while performing operations of Martin Controls during the Policy period.

63. Jonasson's bodily injuries were caused in whole or in part by his acts or omissions while performing work on behalf of, and as employee of, Martin Control as part of Martin Control's ongoing operations.

64. Alternatively, or in addition, Jonasson's bodily injuries were caused in part by acts or omissions of Martin Control for, among other things, failing to properly train and supervise Jonasson.

65. As such, the Policy affords coverage to Omega Protein, as additional insured, for the claims brought against it by Jonasson.

66. The only Selective Policy language which arguably supports Selective's denial is the language in the Endorsement's Blanket Additional Insured, Section B, Paragraph 4, which states in relevant part that an additional insured is only covered "with respect to

13

liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by your [Martin Control's] acts or omissions or the acts of [sic] omissions of those acting on your [Martin Control's] behalf in the performance of your [Martin Control's] ongoing operations[.]"

67. Selective failed to conduct a good faith, prompt investigation of the Jonasson claim, as is required of insurers under Va. Code §38.2-510(A)(3), which investigation would have revealed that the Endorsement's Blanket Additional Insured, Section B, Paragraph 4 language is not a basis for excluding coverage. If Selective had conducted a good faith investigation of the Tender and Jonasson claim, Selective would have readily learned from its own named insured, Martin Control, that Jonasson had caused or contributed to his own injuries in the course and scope of his employment by, among other things, working alone as a trainee IT without his supervisor, working despite being expressly instructed that he was not authorized or permitted to do so, failing to conduct various checks to ensure the equipment he worked on was drained and isolated, using unsafe work methods, working at the Plant after the Plant's work day ended at 3:30 pm, and by working on the sodium hydroxide 50% at all—a tank that Jonasson should have known was not to be serviced and which his supervisor did know was not to be serviced.

68. Alternatively, if Selective has conducted a good faith investigation of the Jonasson claim, Selective learned Jonasson caused or contributed to his own injuries while working for Martin Control, and/or that Martin Control's acts or omissions caused or contributed to Jonasson's injuries, and Selective has denied Omega Protein's Tender in bad faith.

69. Selective is now and has been for some time, or should have been aware for some time had it conducted a timely, good faith investigation, that Jonasson's injuries were caused

or contributed to by Jonasson himself while he was in the employ of Martin Control and engaging in Martin Control's ongoing operations and/or by Martin Control. As such, Selective is aware that it owes coverage, defense, and indemnity to Omega Protein but continues to refuse to provide same.

70. As an insurer owing coverage under the Selective Policy to Omega Protein, Selective has a duty to defend Omega Protein for the claims made by Jonasson.

71. As an insurer owing coverage under the Selective Policy to Omega Protein, Selective has a duty to indemnify, or pay, Omega Protein for any liability resulting from the claims made by Jonasson, at least up to policy limits.

72. As a direct and proximate result of Selective's failure to provide insurance coverage, defense and indemnity, which is owed under the Selective Policy to Omega Protein as an additional insured, Omega Protein has been forced to engage counsel, defend the litigation initiated by Jonasson, and third-party Martin Control into the Jonasson litigation, resulting in directly foreseeable damages to Omega Protein, including attorneys' fees and other costs associated with the defense of the Jonasson Complaint and pursuit of contractual indemnification.

### COUNT I – Declaratory Relief as to the Selective Policy

73. Omega Protein repeats and restates the foregoing paragraphs as if fully set forth herein.

74. There is a real, actual, justiciable controversy between Omega Protein and Selective arising from its refusal to provide a defense, indemnity, and insurance coverage to Omega Protein from the claims asserted against Omega Protein by Jonasson despite its contractual agreement to do so in the Selective Policy. *See* 28 U.S.C. §§ 2201 *et seq.*

75. Omega Protein has been and will continue to be damaged as a direct and proximate result of the refusal of Selective to provide a defense, indemnity, and insurance coverage to Omega Protein for the Jonasson claim, including incurring fees and costs associated with engaging counsel, defending the Jonasson Complaint, and pursuing contractual indemnification against Martin Control.

### COUNT II – Breach of Contract of Insurance

76. Omega Protein repeats and restates the foregoing paragraphs as if fully set forth herein.

77. Based on the express language of the Contract, Martin Control was required to obtain "Comprehensive General Liability Insurance . . . for injury to or death of any one person" with limits per occurrence of at least $2,000,000. *See* Contract, ¶ 8.1(d). The Contract further required Martin Controls to name Omega Protein as an additional insured on its insurance policy for such times that Martin Control was operating under the Contract, such that Martin Controls' insurance policy would respond to the claims asserted against Omega Protein by Jonasson. *See* Contract ¶ 8.11.

78. Based on the express language of the Selective Policy, as read in conjunction with the Contract, and due to the facts of the underlying injury, the Selective Policy covers Omega Protein with respect to the bodily injury claims made by Jonasson.

79. Selective has breached its covenant to defend Omega Protein with respect to the Jonasson claim.

80. Selective has breached its duty to pay or indemnify Omega Protein with respect to any liability Omega Protein may be found to have with respect to the Jonasson claim.

81. Based on this failure, Selective has breached its contract to provide insurance coverage for Omega Protein.

82. Omega Protein has been and will continue to be damaged as a direct and proximate result of the breach of contract by Selective, including incurring costs associated with engaging counsel, defending against the Jonasson Complaint, pursuing contractual indemnification against Martin Control, and the potential of having to respond to any settlement or judgment in Jonasson's favor.

WHEREFORE, Omega Protein, Inc. prays for entry of judgment in its favor against Selective Insurance Company of the Southeast, and that it be granted the following relief:

1. Entry of an Order declaring that Selective Insurance Company of the Southeast owes coverage to Omega Protein, Inc. under the Selective Policy for claims made by Tjorvi Jonasson;

2. Entry of an Order declaring that Selective Insurance Company of the Southeast is obligated to fully defend and indemnify Omega Protein from the claims of Tjorvi Jonasson arising out of his personal injuries suffered on December 6, 2023, including the claims in the Jonasson Complaint;

3. An award of damages against Selective Insurance Company of the Southeast to indemnify Omega Protein for any amounts Omega Protein is found to owe or has paid Jonasson, and for costs of defense of the Jonasson claim, in an amount to be proved at trial;

4. Pursuant to Virginia Code § 38.2-209, a determination by the Court that Selective Insurance Company of the Southeast, not acting in good faith, denied coverage and/or failed or refused to make payment to Omega Protein under the Selective Policy, and entry of an award of costs and attorneys' fees for the costs of this action;

5. That this action be consolidated with and heard together with the action brought by Jonasson in this Court in *Jonasson v. Omega Protein, Inc.*, No. 3:23-cv-219-HEH;

6. Entry of an Order finding that Tjorvi Jonasson is bound by the outcome of the trial in this matter as required by law; and

7.   Such other and further relief as may be just and proper.

**OMEGA PROTEIN, INC.,**

By: /s/ Marissa M. Henderson
David N. Ventker, Esq. (VSB No. 29983)
Marissa M. Henderson. Esq. (VSB No. 44156)
Ventker Henderson Stancliff PLLC
256 West Freemason Street
Norfolk, VA 23510
(757) 625-1192
dventker@ventkerlaw.com
mhenderson@ventkerlaw.com

*Counsel for Defendant*

18